UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Cause No.: 1:21-CV-00007-HAB-SLC<br>) |
| CHURCH MUTUAL INSURANCE COMPANY, S.I., | )<br>)<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

For years, Plaintiff, Brotherhood Mutual Insurance Company (Brotherhood Mutual) and Defendant, Church Mutual Insurance Company, S.I. (Church Mutual) have litigated against each other in courts across the country. Believing that an agreed resolution to resolve future issues between them would bring an end to their repeated disputes, the parties entered into a Settlement Agreement (the Agreement). Alas, the optimism sparked by the Agreement was short-lived and the parties have returned to the courts.

Following its most recent dispute, Brotherhood Mutual filed a declaratory judgment lawsuit in Indiana state court seeking a court determination of the scope and applicability of the Agreement. (ECF No. 3). Church Mutual removed the suit to federal court asserting federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441 (a), because, in its view, "the substantive controversy presents a violation of the Lanham Act, 15 U.S.C. § 1125(a)." (ECF No. 1). Brotherhood Mutual sees it differently and filed the present Motion to Remand (ECF No. 9). The parties have provided extensive briefing for the Court. (ECF Nos. 10, 20, 21, 29, 30). Because the Court finds that the McCarran-Ferguson Act, 15 U.S.C. §1012, reverse preempts actions under the

Lanham Act related to the "business of insurance," the Court lacks jurisdiction over the parties' dispute and the Motion to Remand will be GRANTED.

## FACTUAL BACKGROUND

Church Mutual and Brotherhood Mutual are "direct competitors in a niche insurance market with competing agencies engaging in sales activity intended to sell property/casualty policies within the religious nonprofit organization market." (Compl., ECF No. 3, ¶5).[1]

In 2017, after Church Mutual filed a series of lawsuits against Brotherhood Mutual alleging unfair competition based on its agencies and agents' sales practices, the parties signed the Agreement. (Compl., ECF No. 3, ¶¶s1-2). The Agreement included a "Sales Complaint Resolution Process" (SCRP) to address future agency-related complaints pertaining to "agency sales issues." (*Id.* ¶3). That process is set forth below:

> **6. Sales Complaint Resolution Process between CMIC and BMIC:** If *agency sales issues* arise in the future, CMIC and BMIC will use good faith efforts to amicably resolve any disputes through direct dialogue between CMIC and BMIC. When the Company to which a complaint is conveyed ("Responding Company") receives a sales practices complaint from the Company conveying the sales practices complaint ("Complaining Company"), the Responding Company will investigate the complaint, will take action it deems appropriate under the circumstances (including, but not limited to, warnings, fines, and corrective action requirements), and will advise the Complaining Company of the action it has taken.

---

[1] Brotherhood Mutual operates and issues policies of insurance in the lower 48 states and the District of Columbia. Church Mutual operates and issues policies of insurance in all 50 states and the District of Columbia. (Compl. ¶¶24, 25).

2

> If either Company is dissatisfied with the corrective communication or action taken in addressing a sales practices complaint, then it may request a face-to-face meeting of the respective General Counsel of the two Companies at a mutually-convenient location. At such meeting, the sales practices complaint and the action taken by the Responding Company will be reviewed, and a satisfactory resolution will be sought. If at any point the Complaining Company is not satisfied with the Responding Company's action, the Complaining Company may direct a sales practices complaint to the appropriate Department of Insurance (or state/territory equivalent) where the sales practice occurred for resolution.
>
> If the Companies are unable to resolve the sales practices complaint through a face-to-face meeting, the Complaining Company may pursue resolution through mediation or binding arbitration. If mediation is agreed to by both Companies, it shall take place in a mutually-agreeable location with a mutually-agreed-upon mediator, with mediation expenses to be shared equally by the two Companies. In the event the Companies are unable to resolve the sales practices complaint through the preceding informal dispute resolution process, either party has the right to demand binding arbitration of the complaint. If arbitration is demanded by the Complaining Party, it shall take place in the state where the Responding Company is domiciled, and shall be governed by the Uniform Arbitration Act as adopted by the state where Responding Company is domiciled. (**Exhibit A**) (emphasis added)

Between the date of the Agreement and August 2020, the parties had several reciprocal sales agency complaints which they resolved through the SCRP. Church Mutual, however, has one outstanding unresolved complaint against Brotherhood Mutual arising from a May 19, 2020, webinar. This webinar addressed church re-openings during the COVID-19 pandemic.

During the webinar, a Brotherhood Mutual agent discussed liability coverage for claims arising out of in-person church gatherings during the COVID-19 pandemic. As part of his discussion, the Brotherhood Mutual agent detailed coverage interpretations that Brotherhood Mutual and Church Mutual had publicly posted. In substance, the agent identified that Brotherhood Mutual and Church Mutual have taken opposing positions on whether the exclusion for violating any local, state, or federal criminal statute (the Exclusion) applies to COVID-19 claims related to government orders and restrictions.

3

After the webinar, in-house counsel for Church Mutual contacted Brotherhood Mutual to address the agent's statements made at the webinar and invoke the SCRP process. Brotherhood Mutual undertook an investigation and determined that the statements by its agent at the webinar were materially accurate and did not constitute actionable misconduct. After Brotherhood Mutual notified Church Mutual of its determination, Church Mutual, by letter, requested an in-person meeting under the SCRP. In the letter, Church Mutual also challenged Brotherhood Mutual's interpretation of the Exclusion in its policy as well as Brotherhood Mutual's publicly stated position that "this exclusion would likely not apply to losses which result from the failure to follow executive civil orders related to COVID-19." (Compl. ¶67).

On July 23, 2020, general counsel for the companies met to discuss the Exclusion and potential action that might be taken against the agent for his statements made at the webinar. For nearly a month after this meeting, the parties engaged in continued communications about their dispute. Brotherhood Mutual's understanding from those communications is that the dispute is a direct carrier-to-carrier dispute related to coverage interpretation, not an agency sales practice dispute. But Church Mutual believes that Brotherhood Mutual's materials addressing the Exclusion are "false and misleading within the meaning of the Lanham Act" and violate state laws on unfair insurance practices and unfair competition and are a deceptive sales practice. In line with its belief, Church Mutual demanded arbitration under the SCRP of their Agreement.

Believing the dispute is not covered by the Agreement, Brotherhood Mutual sought a state court determination confirming its position.[2] Church Mutual removed the action to this Court

---

[2] Along with its declaratory judgment action, Brotherhood Mutual filed a regulatory complaint against Church Mutual with the Indiana Department of Insurance targeted at Church Mutual's "anticompetitive behavior concerning Brotherhood Mutual's publicly stated position concerning [the Exclusion] for certain COVID-19 liability claims." (ECF No. 10 at 5).

asserting that federal question jurisdiction exists because the substantive controversy presents a Lanham Act claim, 15 U.S.C. § 1125(a). The Court turns now to the Motion to Remand.

### a. Legal Standards

Unless Congress provides otherwise, a state claim can be removed to federal court only if the federal court has original jurisdiction.28 U.S.C. § 1441(a); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998). This statutory right of removal provides the defendant with an opportunity to substitute his choice of forum for the plaintiff's original choice. *See* Wright and Miller, 14C Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). If the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c). *Id.*

Without diversity between the parties, a defendant may remove a suit to federal court only when the plaintiff's "well-pleaded complaint" raises a federal question. This "well-pleaded complaint" rule makes the plaintiff the "master of the claim," as he or she may avoid federal jurisdiction by pleading only under state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon."). Under the well-pleaded complaint rule, a court will not find federal jurisdiction unless: (1) federal law creates one of the plaintiff's causes of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 690 (2006); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, (2005). In *Grable & Sons*, the Supreme Court explained that a "substantial question of federal

law" exists if (1) there is a substantial and "actually disputed" federal issue, and (2) the exercise of federal jurisdiction will not disturb the "congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314 (2005).

### b. Legal Discussion

The complaint here is narrow: it asks the state court to interpret the Agreement and determine whether it extends to disputes outside of agency sales complaints. On its face, this is a state-law claim that would not provide this Court with subject matter jurisdiction over the dispute. *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) ("A settlement agreement is a particular kind of contract, and so [state] contract law… governs."); *Laserage Technology Corp. v. Laserage Laboratories, Inc.,* 972 F.2d 799, 802 (7th Cir.1992) ("A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally."). Indeed, courts interpret the scope of contract provisions according to the relevant state law. Church Mutual, however, believes the dispute complained of by Brotherhood Mutual involves anti-competitive and unfair competition claims covered by the Lanham Act. Relying on *Vaden v. Discovery Bank*, 556 U.S. 49 (2009), it asserts that "the Court must assess subject matter jurisdiction over this arbitration dispute by 'looking through' to the substantive controversy between the parties." (ECF No. 1 ¶ 6). Not so, Brotherhood Mutual argues, because even if Church Mutual is correct, the Court would lack subject matter jurisdiction over the dispute as the Lanham Act is preempted by the McCarran-Ferguson Act.

### i. The *Vaden* Decision, the Well-Pleaded Complaint Rule, and Federal Question Jurisdiction

In *Vaden*, the Supreme Court explained the jurisdictional analysis applicable in arbitrability disputes. There, Discover Bank filed a state court complaint, arising solely under state

law, seeking to recover past-due charges from Vaden, one of its credit card holders. Vaden counterclaimed alleging violations of state usury laws, a claim which Discover Bank believed was preempted by federal law. In line with that reasoning, Discover Bank, invoking an arbitration clause in its cardholder agreement, filed a §4 petition under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, in federal court seeking to compel arbitration of Vaden's counterclaims. The district court ordered arbitration and the appellate court affirmed.

In reversing the lower courts and concluding that FAA §4 did not empower the federal courts to compel arbitration based on Vaden's counterclaims, the Supreme Court first identified the "national policy favoring arbitration of claims that parties contract to settle in that matter," and noted that § 4 of the FAA created the means to enforce an arbitration demand in the federal courts. *Id.* at 58 (internal quotations and citations omitted). Indeed, § 4 provides a federal-court remedy in arbitration disputes:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

But *Vaden* recognized an oddity about the FAA: "[i]t bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden*, 556 U.S. at 59 (cleaned up). The Court further recognized that Discover invoked no federal law in its state court complaint – that dispute concerned Vaden's failure to pay over $10,000 in past-due credit card charges. Rather, Discover based it's FAA petition on Vaden's counterclaims and asserted that federal law displaced the state usury laws Vaden relied on. Discover could not, the Court ruled, invoke §4 of the FAA based on Vaden's counterclaims but must do so based only on its own complaint.

7

To reach this conclusion, the Court read §4 in tandem with the well-pleaded complaint doctrine and "the corollary rule that federal jurisdiction cannot be invoked on the basis of a defense or counterclaim":

> Parties may not circumvent those rules by asking a federal court to order arbitration of the portion of a controversy that implicates federal law when the court would not have federal-question jurisdiction over the controversy as a whole. It does not suffice to show that a federal question lurks somewhere inside the parties' controversy, or that a defense or counterclaim would arise under federal law.

556 U.S. at 70. Finally, based on the text of § 4, which instructs courts to "assume the absence of the arbitration agreement and determine whether it would have jurisdiction under title 28 without it," *Vaden* endorsed a "look through" jurisdictional analysis to determine whether a §4 request hinges on a controversy that "arises under" federal law. *Id.* at 62. When an arbitration demand turns on federal-question jurisdiction, *Vaden* held that the "court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law," as required by 28 U.S.C. § 1331. *Id.* That "look through" analysis does not depend on the petition's strict language, but upon "the controversy" or "substantive conflict between the parties." *Id.* at 62–63.

Of course, this entire discussion invites the question of why this court is discussing a case under §4 of the FAA when here, the Court has no such petition in front of it. What the Court has here is a declaratory judgment action filed in state court seeking an interpretation of a contract governed solely by state law. Brotherhood Mutual has framed its suit under state law, and, as master of its complaint it may do so. Brotherhood Mutual also points out that it has not invoked federal law or sought to compel arbitration under the Agreement, nor is it a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" as required to maintain an action authorized by the FAA. At first glance then, this case appears to fall under *Vaden*'s admonition that jurisdiction does not lie in federal court where "a federal question lurks somewhere inside the

8

parties' controversy." *Vaden*, 556 U.S. at 70. Even so, Church Mutual argues that the complaint here is "indistinguishable from a Section 4 petition" because "it seeks a declaration as to whether the underlying claims are arbitrable under the [Agreement]." (ECF No. 29 at 3). Fortunately, this Court need not split hairs over whether *Vaden* applies in this context or whether the complaint is a disguised FAA §4 claim because, as shown below, the McCarran-Ferguson Act reverse preempts the Lanham Act, which supplies the only jurisdictional basis on which Church Mutual relied in its removal petition.

### ii. The McCarran Ferguson Act (MFA) and Reverse Preemption

The MFA endows states with plenary authority over the regulation of insurance and provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012.[3] Indeed, the MFA makes states supreme as "to laws 'regulating the business of insurance.'" *SEC v. Nat'l Secs., Inc.*, 393 U.S. 453, 459 (1969) (internal quotation marks)[4]; *see also Humana Inc. v. Forsyth*, 525 U.S. 299, 308-09 (1999). Thus, McCarran-Ferguson authorizes 'reverse preemption' of generally applicable federal statutes by state laws enacted to regulate the business of insurance." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 380 (4th Cir. 2012).

---

[3] The MFA was enacted in response to the Supreme Court's decision in *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944). Prior to the *South-Eastern Underwriters* decision, it had been assumed that issuing a policy of insurance was not a transaction of commerce subject to federal regulation. *U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491, 499 (1993). Thus, the states enjoyed a virtually exclusive domain over the insurance industry. *Id.* However, in *South-Eastern Underwriters*, the Supreme Court held that an insurance company conducting a substantial portion of its business across state lines was engaged in interstate commerce and was subject to the antitrust laws. *Id.* Later, to calm fears that the states' power to tax and regulate the insurance industry would be threatened, Congress enacted the MFA. *Id.* at 499-500.

[4] In *SEC v. Nat'l Secs., Inc.*, 393 U.S. 453 (1969) ("*National Securities*"), the Supreme Court specifically acknowledged that insurance companies would continue to do "many things" subject to federal regulation; but the Supreme Court emphasized that "only when [such companies] *are engaged in the* '*business of insurance*'" does federal law potentially yield to state law. *Nat'l Secs., Inc.*, 393 U.S. at 459-60 (emphasis added).

The Supreme Court has explained that to determine whether the MFA precludes application of a federal law, a district court should weigh three factors: (1) whether the state law is enacted "for the purpose of regulating the business of insurance"; (2) whether the federal law does not "specifically relat[e] to the business of insurance"; and (3) whether the federal law would "invalidate, impair, or supersede" the state's law. *Humana Inc. v. Forsyth,* 525 U.S. 299, 307 (1999).

Brotherhood Mutual contends that the Lanham Act is subject to reverse preemption by the MFA and that state law stands supreme. Acknowledging that no court in the Seventh Circuit has weighed in on the specific issue of whether the MFA reverse preempts the Lanham Act, Brotherhood Mutual cites *Colonial Life & Accident Ins. Co. v. American Fam. Life Assurance Co. of Columbus,* 846 F.Supp. 454 (D.S.C. 1994), and *Ins. Prod. Mktg., Inc. v. Conseco Life Ins. Co.,* 2011 WL 3841269 (D.S.C. Aug. 29, 2011), as persuasive guidance for the Court to consider. The Court agrees that these cases inform the Court's discussion here, as the facts bear a substantial relationship to the present facts and the legal reasoning is supported by the plain language of the statute.

In *Ins. Prod. Mktg.,* the plaintiff filed a state court complaint asserting, among other claims, breach of contract, violations of the Lanham Act and the South Carolina Unfair Trade Practices Act. The parties, like the companies here, were signatories to a settlement agreement resolving prior disputes. Defendant removed the case to federal court asserting that the plaintiff's assertion of the Lanham Act in its complaint supplied the basis for federal question jurisdiction. It then sought dismissal in the federal court action asserting, in part, that the Lanham Act claims were preempted. The district court agreed finding that the MFA, enacted to preserve state regulation of activities of insurance companies unless the federal act specifically related to the business of

10

insurance, applied to the advertising activities complained of in the complaint. *Ins. Prod. Mktg., Inc.*, 2011 WL 3841269, at *4 ("As for the threshold question, the Court finds that the activity complained of—advertising insurance to policyholders—constitutes part of the business of insurance."). The court then concluded that the Lanham Act does not specifically relate to insurance and the South Carolina laws regulating insurance were enacted for that purpose. *Id.* at 7.

Brotherhood Mutual encourages the Court to apply the above rationale to hold that no jurisdiction can lie in federal court based on the Lanham Act. It points out that the Lanham Act does not specifically relate to insurance and notes that every state has enacted generally applicable laws regulating the insurance business. More particularly, Indiana has enacted unfair competition and deceptive trade practices statutes designed to address the precise concerns here. *See* Ind. Code §27-4-1-3.

Church Mutual makes little argument against applying the above precedent to the present facts. It concedes that "there is no dispute that the Lanham Act does not specifically relate to the business of insurance or that the Indiana Unfair or Deceptive Acts and Practices Statute was enacted to regulate the business of insurance." (ECF No. 20 at 12). Rather, its primary argument is that the determination of whether preemption applies is premature at this stage of the litigation. It asserts that preemption is a subject better left for an arbitrator. The Court disagrees.

The propriety of removal is dependent on whether the plaintiff's complaint prompts a federal question because it necessarily raises "actually disputed and substantial issues of federal law that are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Grable & Sons,* 545 U.S. at 314. Further, the removal statute is strictly construed against removal jurisdiction. *Schurr*, 577 F.3d at 758. The strong presumption against

removal jurisdiction means that the defendant always has the burden of establishing removal is proper by a preponderance of the evidence. *Id.* Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.

Here, the critical factor is whether exercising jurisdiction would "herald an enormous shift of traditionally state cases into federal courts." *Grable & Sons*, 545 U.S. at 319. The MFA provides clear evidence that Congress intended issues related to the "business of insurance" to be litigated in state courts unless the federal statute at issue relates to insurance.[5] Church Mutual has not established that the Lanham Act confers jurisdiction and has conceded that it does not relate to insurance. It is Church Mutual's burden to establish that federal jurisdiction exists. At best, Church Mutual has argued for the potential presence of a federal issue in this matter, but even that matter is preempted by the MFA. Thus, it has not shown that Brotherhood Mutual's claims necessarily raise disputed and substantial issues of federal law. For these reasons, Church Mutual has not met its burden to establish that federal jurisdiction exists.[6]

## CONCLUSION

Based on the above, the Plaintiff's Motion to Remand (ECF No. 9) is GRANTED. This case is REMANDED to the Allen Superior Court.

SO ORDERED on August 2, 2021.

---

[5] This case is an oddity in that it deals with the concept of "reverse preemption" in which Congress has articulated a preference for state regulation of insurance matters. Typically, preemption works to preclude state regulation over an area the federal government intends to exclusively control. In this context, "ordinary" preemption is an affirmative defense that "simply allows a defendant to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law." *Comm. State Bank v. Strong*, 651 F.3d 2041, 1260 n.16 (11th Cir. 2011). "Ordinary" preemption is neither a source of federal subject matter jurisdiction, nor a basis for removal to federal court. "[A] case may *not* be removed to federal court on the basis of a federal defense, including that of federal preemption." (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).

[6] Church Mutual is not without a remedy in the state court proceeding. As *Vaden* discussed, Church Mutual may petition the state court to compel arbitration under the Agreement.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT